UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY CRAWLEY,

Plaintiff,

v.                                              CAUSE NO. 3:24-CV-490 DRL-SJF

JOE SCHNEIDER *et al.*,

Defendants.

OPINION AND ORDER

Anthony Crawley, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Crawley alleges prison officials at the Indiana State Prison failed to protect him from an attempted attack by another inmate. Before the incident, he claims he wrote a counselor (who is not named as a defendant) a request for interview on March 14, 2024, concerning the fact that Offender Durell Crain had threatened him with a knife on

multiple occasions.[1] The counselor forwarded that request to Unit Team Manager (UTM) Joe Schneider. Mr. Crawley also wrote to UTM Schneider directly that same day. On March 19, 2024, UTM Schneider came to Mr. Crawley's cell to speak with him about the problem. UTM Schneider told Mr. Crawley he wasn't going to be moved to a different protective custody (PC) unit because Offender Crain was already on "keylock" and couldn't "get to [him]." ECF 1 at 2. On March 26, 2024, Durell Crain came out of his cell and "attempted to light [Mr. Crawley's] sheet on fire." *Id.* at 3.[2] Mr. Crawley yelled for help for approximately one hour, but no officers came to assist. Mr. Crawley alleges Offender Crain then "threw [some]thing into my cell, spit on me, attempted to grab me, and swiped at me multiple times with a razor blade melted to a toothbrush." *Id.*

On March 29, 2024, an unsigned "note" was given to UTM Schneider stating that Mr. Crawley was "going to be murdered" if he was moved back to the PC D-Unit. *Id.* at 2–3. UTM Schneider questioned multiple inmates in the recreation room, but no one admitted to writing the note. Mr. Crawley describes this as "another serious threat on my

---

[1] The requests for interview attached to the complaint state it happened two to three times. *See* ECF 1-1 at 1. They do not say when. *Id.*

[2] Mr. Crawley complains that he was written up for attempting to extinguish the fire with water and subsequently lost good time credits. However, to the extent he is attempting to challenge that disciplinary sanction, he may not do so here because habeas corpus is his exclusive remedy. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . .."). To that end, he can only pursue a claim that he was wrongfully charged and sanctioned with the loss of good-time credit under 42 U.S.C. § 1983 if the guilty finding has been overturned. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997) ("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.").

life." *Id.* at 3. Despite this alleged threat, Mr. Crawley was returned to the same PC unit where the note was discovered.

On March 30, 2024, Mr. Crawley submitted a grievance about his concerns and asked to be transferred to a different PC unit. That grievance was returned to him with a notation referring to the matter as a classification issue. Mr. Crawley then filed a classification appeal on April 10, 2024, which he says should have been received by Dawn Bus but was instead reviewed and denied by UTM Schneider. Based on these events, Mr. Crawley has sued UTM Schneider and Dawn Bus for monetary damages.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quotations, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm

and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the law equates "substantial risk" to risks so great that they are almost certain to materialize if nothing is done. *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). Rather, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

As an initial matter, Dawn Bus is only mentioned once in the body of the complaint. Mr. Crawley claims she "should've received" the classification appeal but didn't. These allegations fail, as supervisor liability is insufficient to state a claim. *See e.g.*, *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal

responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). This is a high standard, designed to ensure that "supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). The claims against Dawn Bus must be dismissed.

Mr. Crawley has not stated a claim against UTM Schneider either. He alleges that UTM Schneider was informed Offender Crain had threatened Mr. Crawley two or three times in the past and that he refused to place Mr. Crawley on a different PC unit based on those facts. Mr. Crawley admits that both he and Offender Crain were already in protective custody at the time the attempted attack occurred and that additional safeguards had been implemented against Offender Crain (*i.e.*, he was placed under "keylock"). Prison officials who have actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they respond reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Here, UTM Schneider was allegedly aware of a threat, but safety measures were in place with regard to Offender Crain. Mr. Crawley doesn't allege UTM Schneider played any role in the lapse in security on March 26, 2024, during which Offender Crain was apparently not under keylock. There are no additional allegations of ongoing lapses of the sort, so UTM Schneider's decision to keep Mr. Crawley on the same PC unit was not unreasonable.[3]

---

[3] The fact that an unsigned note stating Mr. Crawley was going to be "murdered" was discovered three days *after* the attempted attack doesn't subject UTM Schneider to liability.

Moreover, Mr. Crawley alleges Offender Crain "attempted" to light his sheet on fire, grab him through the bars of his cell, and swipe at him with a razor blade. He doesn't allege he was actually physically harmed or even touched by Offender Crain.[4] *See, e.g., Kemp v. Fulton Cty.*, 27 F.4th 491, 494 (7th Cir. 2022) ("Incarcerated people have a clearly established right to be free from *physical harm* inflicted by others in the institution.") (emphasis added)); *see also Walker v. Leibert*, 844 F. App'x 920, 922 (7th Cir. 2021) ("[T]o the extent Walker seeks damages based on the risk of what *could have* happened to him as a result, that risk is not actionable under § 1983 without actual injury.").

Finally, although Mr. Crawley has only requested monetary damages, the court has also considered whether ongoing injunctive relief might be appropriate. Mr. Crawley complains about events that occurred in the spring of 2024 related to Offender Crain. However, according to Offender Crain's filings in another federal civil rights case, he was transferred to the Westville Correctional Facility on September 6, 2024, and remains there to this day. *See Crain v. Ron Neal, et al.*, cause no. 3:23-CV-262-DRL-JEM (filed Apr. 3, 2023) at ECFs 78 & 79. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). "Allegations of a likely retransfer may not be based on mere speculation." *Id*. A claim that is moot must be dismissed for lack of jurisdiction. *See E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021); *see also Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) ("In an action

---

[4] He says he was spit on and is worried about a potential communicable disease, but he doesn't allege he has any symptoms or even that he requested any medical care related to the incident.

seeking only injunctive relief, this requirement ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot."). Therefore, it would be futile to allow Mr. Crawley to amend his complaint to request injunctive relief because the threat of harm from Offender Crain is now moot.

For these reasons, permitting an amendment would be futile. Though the "usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages," *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018), that is not the case when the amendment would be futile, *see id.*; *see also Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023).

The court DISMISSES this case pursuant to 28 U.S.C. 1915A because the complaint fails to state any viable claims.

SO ORDERED.

May 2, 2025                                        *s/ Damon R. Leichty*
                                                   Judge, United States District Court